In the Matter of DAIRYLEA COOPERATIVE, INC., Petitioner, v JAMES S. DYSON, as Commissioner of the Department of Agriculture and Markets of the State of New York, Respondent.

Third Department, January 20, 1977

*Bond, Schoeneck & King (John M. Freyer* and *Edward D. Cavanagh* of counsel), for petitioner.

*Thomas G. Conway (Dennis P. Buckley* of counsel), for respondent.

LARKIN, J. Dairylea Cooperative, Inc. (Dairylea), seeks a judgment of this court reversing the determination of the Commissioner of Agriculture and Markets that Dairylea violated article 21 of the Agriculture and Markets Law. The commissioner issued a cease and desist order against Dairylea and Acme Markets, Inc., and demanded $100,000 from Dairylea "pursuant to Agriculture and Markets Law §§ 39 and 40" as a civil penalty. Special Term issued an order restraining the commissioner from enforcing any part of his determination and order pending the final resolution of petitioner's article 78 proceeding herein.

Petitioner contends that the commissioner's decision is not supported by substantial evidence and that the civil penalty imposed is in excess of the commissioner's statutory powers and jurisdiction and is arbitrary, capricious and an abuse of discretion. The commissioner contends that there is more than sufficient evidence to support his determination and that his order demanding a civil penalty is a nonfinal order and, as such, is not reviewable in an article 78 proceeding (CPLR 7801). The petitioner urges that the facts as found by the commissioner do not, as a matter of law, constitute a violation of the Agriculture and Markets Law.

Dairylea, a co-operative corporation, holds a milk dealer's license to sell milk in 37 counties in New York State, but not in 9 of the counties in question in the instant proceeding. In the fall of 1974, Dairylea entered into an agreement with American Stores, Inc. (Acme), to supply milk and related

products to Acme Supermarkets throughout New York State, including 15 Acme Supermarkets located in the 9 counties where Dairylea is not licensed to sell milk. The contract between Acme and Dairylea was executed in November, 1974, with service to commence on December 23, 1974. After execution of the contract, Acme canceled its milk contracts with those licensed milk dealers who had been servicing the 15 supermarkets located in the 9 counties in question. Dairylea, knowing that it was not legally authorized to sell its own processed milk directly to Acme in the aforesaid 9 counties, thereupon contacted milk dealers who were licensed to sell milk in the 9 counties where Acme's stores were located and arranged for those milk dealers to fulfill Dairylea's obligation under its contract with Acme.

Although deliveries of milk by these "subdealers" or "subcontractors" began on December 23, 1974, formalized contracts between Dairylea and those "subdealers" were not signed until late January, 1975. Several plans were extended by Dairylea to its "subdealers" regarding how they were to be paid, but under the final draft of the contract the subdealers were to bill Acme directly and to be paid directly by Acme. The executed contracts between Dairylea and the subdealers recited that the subdealers sought certain of Dairylea's rights and that Dairylea wished to grant such rights to the subdealers. The contracts did not require Acme's approval of the subdealers. Petitioner argues that the most that can be logically concluded from the record is that Dairylea arranged a procedure by which licensed dealers sold their own milk to Acme stores which they were licensed to serve. Dairylea urges that the subdealers were processing their own milk and were independent of Dairylea, although the record indicates that most of the subdealers had previously bought their raw milk from Dairylea.

It appears that no consideration was received by Dairylea from either Acme or the individual licensed dealers for the sale of the milk in those counties where Dairylea was not licensed. Nevertheless, the price Acme paid for the processed milk it received was a result of negotiations between Acme and Dairylea rather than the result of bargaining between Acme and the milk dealers who processed and delivered the milk. Payments by Acme to the "subdealers" were made in satisfaction of Acme's contractual ogligations to Dairylea, not its obligations to the subdealers. Competition among the milk

dealers who were licensed in those nine counties was not for Acme's business but for Dairylea's because Dairylea, by contract, had obtained the entire Acme account in those counties. Such activity clearly undermines the purposes and objectives of the licensing laws set forth in article 21 of the Agriculture and Markets Law *(Matter of Sealtest Foods Div. of Nat. Dairy Prods. Corp. v Wickham,* 33 AD2d 51; *Matter of Glen & Mohawk Milk Assn. v Wickham,* 28 AD2d 764, affd 24 NY2d 963, cert den 396 US 1004; *Matter of Friendship Dairies v Du Mond,* 284 App Div 147). If such actions by Dairylea were to be approved by the commissioner, Dairylea could extend its operations to all counties in the State, whether licensed therein or not, by merely entering into agreements with "subdealers". While there may be no direct profit to Dairylea from the subdealers, the economic control is obvious. Such a plan contravenes the fundamental purposes of the Milk Control Act (Agriculture and Markets Law, § 258-k).

The commissioner also determined that Dairylea violated article 21 of the Agriculture and Markets Law by the sale and delivery of certain milk and cream products beyond the authorizations of its license to certain milk dealers in counties in which it was not licensed. We do not find that on the facts herein, such delivery constituted a separate and distinct violation of article 21 of the Agriculture and Markets Law. The destination of the milk was Acme stores in counties where Dairylea was prohibited from selling milk. The milk dealers were under contract with Dairylea to resell "the milk to Acme at a price set by Dairylea and Acme". The ultimate delivery of the milk in question was predetermined by Dairylea and Acme and we find that these facts do not constitute a separate violation.

Petitioner's allegation that the commissioner's order demanding $100,000 pursuant to sections 39 and 40 of the Agriculture and Markets Law was in excess of his statutory powers and jurisdiction and was arbitrary and capricious and an abuse of discretion is not here considered. The statutes in question provide for a plenary civil action at law. The commissioner's demand is not self-executing and assessment cannot occur until the commissioner turns the matter over to the Attorney-General, who has the power to release, settle or compromise the demand, either before or after an action is brought to recover such penalty. Accordingly, the assessment is not reviewable in this proceeding (CPLR 7801, subd 1; *Matter of Brings Shortenings v Wickham,* 36 AD2d 553).

The determination should be modified so as to provide that Dairylea Cooperative Inc. violated the Agriculture and Markets Law by engaging in the sale, dealing in, handling and distribution of milk as well as certain packaged milk and cream products beyond the authorization of its license to stores of Acme Markets Inc., and by reversing so much thereof as found that the petitioner violated the Agriculture and Markets Law by the sale and delivery of certain packaged milk and cream products to milk dealers beyond the authorization of its license and as so modified, confirmed, with costs to respondent. Petition insofar as it seeks to review the demand for the payment of a civil penalty in the amount of $100,000 dismissed.

KOREMAN, P. J., SWEENEY, MAIN and HERLIHY, JJ., concur.

Determination modified so as to provide that Dairylea Cooperative Inc. violated the Agriculture and Markets Law by engaging in the sale, dealing in, handling and distribution of milk as well as certain packaged milk and cream products beyond the authorization of its license to stores of Acme Markets, Inc., and by reversing so much thereof as found that the petitioner violated the Agriculture and Markets Law by the sale and delivery of certain packaged milk and cream products to milk dealers beyond the authorization of its license, and, as so modified, confirmed, with costs to respondent. Petition insofar as it seeks to review the demand for the payment of a civil penalty in the amount of $100,000 dismissed.